Mr. Justice Cox
delivered the opinion of the court.
This is an action on an administration bond against a.surviving administratrix, one of her sureties and the administrator of another surety, by the administrator de bonis non, cum testamento annexo, of the same estate. The defendant, Charlotte L. Ames, administratrix of Horatio Ames, was not served. The other defendants appeared and defended. The declaration contains two counts.
The first is a general count in debt for the penalty of the administration bond. To this the defendants plead, generally, performance of the condition of the bond by the administrators. The plaintiff replies by assigning, as breaches, that Charlotte L. Ames, as administratrix, collected from the United States a large sum of money, $89,955, which she *279 allowed to remain in the hands of her agent until, by decree of the Orphans’ Court, she was removed from her office, and the plaintiff, N. Wilson, appointed ádministrator in her place, and she was ordered to transfer to him all moneys and assets belonging to said estate, &c., and that she has never paid said sum; that in the settlement of her accounts she .was charged with the sum of $34,876.75, and directed by decree of said court to turn it over to plaintiff Wilson, which she has never done ; that she had filed her account in said court, charging herself with a certain balance for distribution, resulting from collections from the United States, and was directed by decree of said court to pay said balance to said plaintiff', and has not done so. To this replication the defendant's demur.
The secondccount of the declaration sets out the condition of thp administration bond, and avers, as a breach, that in the settlement of the account of the administratrix, she was directed, by a decree of the Orphans’ Court, to pay over to the plaintiff’, N. Wilson, administrator de bonis non, cum testamento annexo, of the estate of Horatio Ames, the sum of $34,876.75, which she has failed to do. The defendants plead to this, that the money claimed is the proceeds of a claim against the United States, collected and converted into money by the administratrix, and thereby administered by her before her removal from office, and that they ought not to be precluded by the decree of the Orphans’ Court from showing this, as they were not parties to the proceeding in which it was passed. These pleas are demurred to by the plaintiff.
- In both lines of pleading, the same important fact appears, vjz., that the breach complained of consists of the omission of the original administratrix, after she was removed from office, to pay over to her successor, the administrator de bonis non, in pursuance of the decree of the Orphans’ Court, certain moneys which she had collected from the United States.
The plaintiff's replication to the defendant’s first plea avers" that the money was' bó collected by the administratrix, *280 And the defendants’ second and third pleas, Which ’are admitted to b¿ true by the demurrer of the plaintiff' to them, aver the same fact, with the addition that the money was the proceeds of a chose in action belonging to the decedent,■ in the shape of a claim against the United States, and was administered. Of course, however, the admission by the demurrer, that the money was administered, does not conclude the plaintiff as to the question what amounts in law to administering.
The casé is heard here in the first instance, and the demurrers present two questions, viz., first, whether, independently of the decision of the Orphans’ Court, the administrator de boniscnon is entitled to the money in question ; and secondly, whether, independently of this question, the decree of the Orphans’ Court is conclusive, until reversed, of the plaintiff’s right to the money, and was it a breach of the conditibn of “the bond not to obey it.
In the case of Wilson vs. Arrick,* we have already considered the first question, and came to the conclusion that money collected by an executor or original administrator, unless at least specially set aside and specifically designated .as the assets óf the deceased, is administered assets, for which the original administrator is to account directly to the creditors, legatees or distributees of the deceased, and not to the administrator de bonis non. Hence, we are compélled to answer the first question in the negative.
But it is maintained by the plaintiff, as one of the grounds Of demurrer to defendants’ pleas, that the decree of the •Orphans’ Court cannot be collaterally impeached, and, until ¡reversed, is conclusive of the plaintiff’s right to the money, both against the administratrix and her sureties.
In considering this question, it is always to be borne in mind, that the pleadings, according to our viéw of the law:, .admit the facts fatal to the plaintiff’s claim to the money, or, in other words, admit that he is'not entitled'to it, unless in virtue of this decree. So that the position of the 'plain *281 tiff must be, either that the decree, until reversed, is binding, though erroneous in point of law on its face, or, that the Orphans’ Court must be presumed to have decided the existence of facts which would sustain it, and that this decision, though erroneous in fact, is conclusive.
The facts clearly presented on the record are that this money was administered assets, and that the court decreed it to be paid over to the plaintiff, which was an error.
The important question is, whether this is only an error, which is to be redressed on appeal, or is an excess of jurisdiction.
It is urged, on plaintiff’s part, that the Orphans’ Court had jurisdiction over the person of the administratrix and over the assets, and that the disposition of these assets by its decrees Avas one of the plainest of its powers, and that consequently, if an error was committed therein, it was simply an error and not a nullity.
It is too broad a proposition that where a court has jurisdiction over a person and a subject-matter, it may pass any decree in relation to them, and that such decree, however erroneous, cannot be collaterally assailed. On the contrary,, even in case of admitted jurisdiction over person and thing, there are decrees which a court has no jurisdiction to pass. This was illustrated by the Supreme Court in the case of Windsor vs. McVeigh, 93 U. S., 274.
As that court say : “ Though the court may possess jurisdiction of a cause, of the subject-matter and of the parties, it is still limited in its modes of procedure and in the extent and character of its judgment. It must act judicially in all things, and cannot then transcend the power conferred by law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performace of a contract. If the action be for the possession of real property, the court is powerless to admit, in the case, the probate of a will. In *282 stances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The.-judgments mentioned, given in the case .supposed, would not be merely erroneous ; they would be absolutely void, because the court in rendering them, would transcend the limits of its authority in those cases. See the language of Mr. Justice Miller in the case of Ex parte Lange, 18 Wall., 163; so it was held by this court, in Bigelow vs. Forrest, 9 Ind 351, that a judgment in a confiscation case, condemning the fee of the property was -void for the remainder, after the . termination of the life-estate of the owner. To the objection that the decree' was conclusive, that the' entire fee was confiscated. Mr. Justice Strong, speaking the unanimous opinion of the court, replied : “ Doubtless, a decree of a; court having jurisdiction to make the decree, cannot be impeached collaterally, but under the act of Congress, the District court had no power to order a sale which should confer upon the purchaser rights outlasting the life of French Forrest (the owner). Had it •done so, it would have transcended its jurisdiction.”
The same principle is asserted in Ex parte Lange, supra, and vindicated at length.
Now, it is true that the Orphans’ Court had jurisdiction over the administratrix and estate of Horatio Ames. But to pass decrees which it had no power by law to pass, would be transcending its jurisdiction) and such decrees would, ’be nullities. If the. court had directed the whole estate to.be applied to -public charities,, would such a deoree 'be merely error ? Or if, before the act of Congress of 1846.was passed., the court, without any authority of law, had undertaken to remove an- administrator, as that act; directs,-and ordered payment of the estate .to. the 'administrator de bonis non, would such a decree have been-conclusive until reversed? .Or., if the act of Congress had expressly directed all moneys collected by an executor or original administrator to be accounted for directly- by. him to .the parties interested, and not to be paid to. the administrator de bonis non, w.ould. a decree in-direct, opposition to.the act be merely erroneous,.but .conclusive .until .reversed ?••We think. .b,ut one- answer can *283 be given to these inquiries, and that all such decrees would, have to be treated as simply -void.
We can easily distinguish between cases like these and mere errors.which are unassailable collaterally. If,-for instance, in admitting a will of personalty to probate, or in the construction of -it, or in determining the rights of legatees of distributees under it-, or in the construction of the law of distribution in case of intestacy, the-court should err, it must-be remedied by appeal. If the Orphans’ Court had been invested with the power to decide the title of all persons to-the personal estate of the deceased, an erroneous decision that administered assets would pass to the administrator dé bonis-non would be binding until reversed.
But the Orphans’ Court- is one of limited statutory powers! The act of Congress gives it express power to direct the delivery of unadministered assets by a displaced administrator to his successor, and this impliedly excludes the power to give administered assets the same direction. A decree in the latter s.ense would exce'ed the power of the court, and according to the principles laid down, transcend its jurisdiction .1 >
It is said, however, that the court, in the exercise of its power over this question, had to determine whether the assets in question were administered or not; that its determination of that question was within its jurisdiction, and we must presume that the court did determine the facts necessary to the validity of its judgment.
A judgment, or decree is conclusive, in any case, only of questions actually presented to and determined by the court. If it had appeared-in the pleadings or in evidence that the plaintiff had petitioned the Orphans’ Court for the decree in question, averring that the money in question was 'the-actual mouey owned by. the decedent, in the shape of certain coins tied up in bags and labelled so.as to distinguish it frohi his general funds, or even that the administrator 'had 'collected' it, but had so-designated and sét it aside! and oh thfit ground-the plaintiff' claimed-it to- bh specific and' unadtnikc is'tered assets, and the court on hearing-liad determined 'the! *284 facts to be as alleged, it would perhaps be impossible for the defendants to avoid the conclusiveness of such a judgment. For, ordinarily, the decisions of a court upon even jurisdictional facts, i. e., facts necessary to sustain its jurisdiction, are considered binding, and here would be a decision of a court of competent jurisdiction on the identical cause of action involved in this suit, to wit, the plaintiff’s right to this identical money. And it would perhaps be held to be a decree in rem, conclusive against every one. But such is not the case presented in this record. It simply shows that the court decreed certain administered assets to be paid over to the administrator de bonis non.
In the view we are considering, the decree is relied on as an estoppel on the question of fact, whether the assets were administered. But to its effect for that purpose, it is necessary to help it out by presuming that the court decided a fact without which its decree is erroneous. We are not aware of any rule which requires us to do this. If, as I have already said, the issue of fact had been distinctly made, and the court could not have rendered its decree without deciding the fact in question, then we might be compelled, with a proper state of pleadings, to regard the decree as an estoppel. But when we see that the court may have based its decree upon an erroneous assumption of law, there is no rule that requires us to presume a state of facts in order to sustain it as a valid decree.
' We cannot, therefore, regard this decree as conclusive of the fact that these were unadministered assets.
But, besides this, we do not see how the plaintiff could avail himself of such estoppel in this suit. According to our view of the law, as before expressed, the pleadings, on both sides, admit these assets to be administered, and these pleadings estop the parties from denying it for the purposes of this case. An estoppel, at most, is evidence. It is the actual or constructive admission of a party, which is held to conclude him. But when the other party also conclusively admits of record the opposite state of facts, how can he avail himself of his adversary’s admission? As expressed in *285 Sinclair vs. Jackson, 8 Cowen, 543, “ where verity is apparent in the same record, there the adverse party shall not be estopped to take advantage of the truth.”
Had the decree of the Orphans’ Court been simply erroneous, either in law or fact, other embarrassing questions would have presented themselves, such as the question whether the decree against the principal would be binding and conclusive against the sureties. But as we consider the decree void, as in excess of the power of the Orphans’ Court, it is unnecessary to consider them.
On the whole, we are of opinion that on the demurrers judgment must be for the defendants.

Ante, p. 228.